## Bria et ux. v. Isaacman

*Harold R. Prowell,* for plaintiffs.
*Samuel Handler,* for defendant.

HARGEST, P. J., May 1, 1944.—This matter comes before us upon a petition and rule to strike off a confession of judgment in an amicable action of ejectment.

Plaintiffs entered into a lease with defendant in November 1943 to lease 117 and 119 South Front Street, Steelton, which is used as a "business place and dwelling", from the first day of December 1943, monthly, for the sum of $100 a month. The lease provides: "Lessee agrees to vacate on or before March 1, 1944, without further notice." The amicable action was entered March 21, 1944, and a writ of habere facias possessionem was issued "for all that portion of premises occupied and used as restaurant and business place being all of first floor and western portion of second floor." The reason for the entry of the judgment is that the term has expired and there was a consequent default on the part of the lessee to vacate.

The petition to strike off avers that the entry of judgment is prohibited by the Emergency Price Control Act of January 30, 1942, 56 Stat. at L. 23, and section 6 (*a*) of the Rent Regulations for Housing issued May 31, 1943, and effective June 1, 1943.

The Rent Regulations for Housing, promulgated by the Office of Price Administration, provide:

"Section 1. This regulation applies to all housing accommodations within each of the defense - rental areas . . ."

"Sec. 13 Definitions. (a) (6) 'Housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes, . . ."

The question, therefore, is whether this entry of judgment and the subsequent writ of habere facias

possessionem are valid to secure possession of that part of the premises not occupied for living or dwelling purposes.

In C. C. H., War Law Service, vol. 4, para. 49,124.25, it is stated:

"Structures not 'rented or offered for rent for living or dwelling purposes' are not subject to the Rent Regulation. Nevertheless, buildings or structures in which business and dwelling uses are combined may, under some circumstances, be subject to the Regulation."

There is no suggestion as to in what "circumstances" the last sentence would apply.

Section 6 (a) provides:

"So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated . . ."

It must be borne in mind that these regulations apply to to "housing accommodations", which are defined as "rented for living or dwelling purposes".

The entry of the judgment is, of itself, neither an "action to evict" nor an "attempt" to remove. It may be the first step in such a proceeding. The writ of habere facias possessionem is the action to evict.

The judgment entered by virtue of the lease must be entered for the whole premises. The praecipe for the writ of habere facias possessionem limits the operation of the writ to that portion of the premises not used for "living or dwelling purposes". There are many instances where a judgment is entered and an execution issued for a much less amount. A common illustration is where, upon a breach of the terms of a lease, a judgment is entered for the amount due for the whole term

but execution is issued only for the amount of rent due up to the time of the issuance thereof.

Defendant contends that, inasmuch as the contract is single and indivisible, wherein defendant is obligated to pay a single consideration for the whole of the leased property, plaintiffs have no right to divide it and attempt to secure a portion of it.

In determining these questions we must consider the reason and spirit of the Emergency Price Control Act and the regulations thereunder. It is a war measure and, to the extent that it authorizes the violation of obligations of contracts and gives to individuals rights that they in peacetimes could not secure, both the statute and the regulations should be strictly construed. Where the equities are wholly on the side of supporting a contract, the court should not be astute to find reasons for striking it down when the matter has little or no relation to the war effort. Both the statute and the regulations should be construed to carry out their reason and spirit and to interfere with contractual right only so far as to effectuate their purpose.

Defendant agreed "to vacate on or before March 1, 1944, without further notice". He now attempts to set aside his contract, in effect seize possession of the property, and continue to hold it in violation of his agreement, shielding himself behind an act of Congress and regulations pursuant thereto passed in furtherance and protection of the war effort. Of course, if the contract is not divisible and defendant can hold the whole property, although he uses only a part of it for living purposes, he would have to prevail; but since the war effort has little or no connection with this controversy we see no reason why he should have more rights than the clear language of the housing regulations give him, and that is to prevent interference with his living quarters.

We are not concerned as to how much rent he should subsequently pay for the living quarters; we are im-

mediately concerned with the right of plaintiffs to secure possession of that part of the premises which is not used for living or dwelling purposes.

We have examined the cases of Home Protective Savings & Loan Assn. v. Robinson et ux., 47 D. & C. 505, and Home Protective Savings & Loan Assn., to use, v. Kefalas et ux., 48 D. & C. 346. In those cases the attempt was to secure possession of housing accommodations, and they do not apply to the questions before us. However, to the extent that they hold that the entry of judgment alone is in violation of the Emergency Price Control Act, we cannot follow the learned court which decided those cases.

Now, May 1, 1944, the petition to strike off the judgment is dismissed, the rule granted thereon discharged, and the stay of the writ of habere facias possessionem, to secure possession of "all the portion of premises 117-119 S. Front St., Steelton, occupied and used as restaurant and business place being all of first floor and western portion of second floor", is removed.